# STATE OF MICHIGAN

# COURT OF APPEALS

ESSA GHANEM,

        Plaintiff,

and

VHS OF MICHIGAN, INC, d/b/a DETROIT
MEDICAL CENTER,

        Intervening Plaintiff-Appellant,

v

FRANKENMUTH MUTUAL INSURANCE
COMPANY,

        Defendant-Appellee.

UNPUBLISHED
April 12, 2016

No. 325045
Wayne Circuit Court
LC No. 14-002317-NF

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

      Intervening plaintiff, VHS of Michigan, Inc. (VHS), d/b/a Detroit Medical Center, appeals as of right an order granting defendant's motion for summary disposition in this action to recover no-fault personal injury protection (PIP) benefits. We reverse and remand.

      On July 25, 2013, plaintiff was in an automobile accident and VHS provided healthcare services for his injuries. Subsequently, plaintiff brought this action for first-party PIP benefits, alleging that he was entitled to benefits under his mother's no-fault insurance policy because he was domiciled in her household at the time of the accident. VHS intervened in the action to recover PIP benefits for the healthcare services it provided to plaintiff.

      Defendant filed a motion for summary disposition under MCR 2.116(C)(10), alleging there was no genuine issue of material fact that plaintiff was living in Canton at the time of the accident, and thus was not domiciled with his mother, who was living in Westland. Plaintiff did not respond to defendant's summary motion, but VHS responded and submitted evidence in support of its argument that plaintiff had moved from the Canton address before the accident and was domiciled with his mother in Westland at the time of the accident. The trial court granted

-1-

defendant's motion, holding that there was no genuine issue of material fact that plaintiff lived in Canton on the date of the accident.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Grandberry-Lovette v Garascia*, 303 Mich App 566, 572; 844 NW2d 178 (2014). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The trial court "must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id*. Summary disposition is appropriate if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id*.

Under MCL 500.3114(1), a PIP policy applies to the named insured, that person's spouse, and a relative of either who is domiciled in the same household. A person may have only one domicile. *Grange Ins Co v Lawrence*, 494 Mich 475, 494; 835 NW2d 363 (2013). In *Grange*, our Supreme Court distinguished the terms "domicile" and "residence," stating:

> [A] person may have only one domicile, but more than one residence. For purposes of distinguishing "domicile" from "residence," this Court has explained that domicile is acquired by the combination of residence and the intention to reside in a given place . . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile. The traditional common-law inquiry into a person's "domicile," then, is generally a question of intent, but also considers all the facts and circumstances taken together. [*Id*. at 494-495 (footnoted citations and quotation marks omitted, ellipses in original).]

"Generally, the determination of domicile is a question of fact," but "where . . . the underlying facts are not in dispute, domicile is a question of law for the court." *Fowler v Auto Club Ins Ass'n*, 254 Mich App 362, 364; 656 NW2d 856 (2002).

In *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477; 274 NW2d 373 (1979), our Supreme Court identified four factors relevant to determining domicile:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his 'domicile' or 'household'; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging 'residence' or 'domicile' in the household . . . . [*Id*. at 496-497 (citations and internal quotation marks omitted).]

In that case, the plaintiff and her husband lived in a trailer situated on the plaintiff's father-in-law's property. The Court concluded that the plaintiff was domiciled in the same household as her father-in-law, based on evidence that: (1) she intended to continue living in the trailer indefinitely; (2) she was not looking for another place to live; (3) she considered the trailer her

home; (4) she used the same mailing address as her father-in-law; and (5) she freely and permissively used her father-in-law's household facilities. *Id*. at 497-498.

In *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675; 333 NW2d 322 (1983), this Court identified "[o]ther relevant indicia of domicile," including "such factors as whether the claimant continues to use his parents' home as his mailing address, whether he maintains some possessions with his parents, whether he uses his parents' address on his driver's license or other documents, whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support." *Id*. at 682. This Court held that the trial court did not err in finding that the claimant was not a domiciliary of his mother's household for purposes of claiming coverage under her policy because he: (1) had not lived with his mother for six months, (2) did not depend on her for support, (3) planned to continue his living arrangement indefinitely, and (4) had no plans or expectations to return to his mother's home. *Id*. at 684.

In this case, the evidence showed that plaintiff and his parents lived in Canton before the accident, and that plaintiff's mother moved to Westland sometime before the accident. The parties disputed whether plaintiff also moved to Westland and was domiciled in his mother's residence at the time of the accident. Defendant argued, and the trial court agreed, that there was no question of fact regarding plaintiff's domicile in Canton because his previous state identification card (state ID), the accident report, and court records for plaintiff's criminal case all listed the Canton address at or near the time of the accident. Defendant argues that the only documentary proof offered in support of plaintiff's domicile in Westland was a state ID card plaintiff obtained after the accident. VHS, however, submitted evidence that supported a finding that plaintiff had in fact relocated to Westland with his mother before the accident.

VHS submitted plaintiff's deposition testimony in which plaintiff explained that he previously resided with his parents in the Canton house, which had been owned by his brother who died in 2012. Plaintiff explained that neither he nor his parents paid the mortgage after his brother's death, which resulted in foreclosure proceedings. Plaintiff was not certain when he and his parents moved to the Westland house, stating that it could have been in January or February 2013, or two or three months before the accident, but he was certain that he was living in Westland with his parents on the day of the accident because he had left the Westland house before the accident and returned to it after he was treated at the hospital. Although plaintiff could not produce any bills with his name and the Westland address, plaintiff stated that none of the accounts were in his name. Plaintiff stated that court documents still had the Canton address because, although he notified his probation officer that his address had changed to Westland, he failed to notify the court clerk. Plaintiff and his mother both submitted affidavits averring that plaintiff was residing in his mother's home in Westland on the date of the accident. VHS also provided documentation that the Canton house was foreclosed and purchased by JP Morgan Chase Bank on July 5, 2012, and resold to other buyers on July 9, 2013, well before this accident.

Viewed in a light most favorable to VHS, as the non-moving party, the evidence established a question of fact regarding plaintiff's domicile on the date of accident. Therefore, the trial court erred in granting defendant's motion for summary disposition. We disagree with VHS, however, that it was entitled to summary disposition under MCR 2.116(I)(2) ("[i]f it

appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party"). Because there was competing evidence regarding whether plaintiff had terminated his domicile in Canton and established a new domicile at his mother's home in Westland at the time of the accident, VHS was not entitled to summary disposition under MCR 2.116(I)(2).

Defendant argues that plaintiff's failure to respond to its summary disposition motion operates as a waiver of his claim for PIP benefits, and therefore also precludes VHS from recovering any benefits, which defendant argues are entirely derivative of plaintiff's entitlement to benefits. Defendant presents this argument as an alternative basis for affirming the trial court's judgment. See *City of Riverview v Sibley Limestone*, 270 Mich App 627, 633 n 4; 716 NW2d 615 (2006). Although the trial court did not address this issue below, we will consider it because it involves a question of law and the facts necessary for its resolution have been presented. See *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010). This argument challenges VHS's standing to assert a claim for PIP benefits owed to plaintiff. "Whether a party has standing to bring an action is a question of law reviewed de novo on appeal." *Chiropractors Rehab Group, PC v State Farm Mut Auto Ins Co*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 320288), lv pending; slip op at 4.

In *Chiropractors Rehab Group*, this Court addressed whether the plaintiff healthcare providers were precluded from bringing direct claims against the injured patients' no-fault insurers when the injured persons failed to cooperate with the insurers' policy requirements. The defendant denied benefits to Raynard Jackson because he failed to cooperate with the investigation of his claims, specifically by failing to submit to an independent medical examination (IME). The defendant denied benefits to Ricky Johnson because he failed to appear for an examination under oath (EUO). This Court rejected the defendant's argument "that healthcare providers do not have standing under the no-fault act to bring an action against an insurer to obtain no-fault PIP benefits." *Id*. at ___; slip op at 4. This Court concluded that the plain language of MCL 500.3112, which states that "[p]ersonal protection insurance benefits are payable to *or for the benefit of* an injured person," reveals the Legislature's "intent to allow either the injured person *or* a party that provided benefits to an injured person to recover the payment of benefits from an insurer; the injured person is not the only party who has this right." *Id*. at ___; slip op at 5-6 (emphasis in original). That decision supports VHS's right to pursue a claim for PIP benefits regardless of plaintiff's diligence.

Defendant's reliance on statements by this Court in *Moody v Home Owners Ins Co*, 304 Mich App 415; 849 NW2d 31 (2014), is misplaced. In *Moody*, this Court held that "the providers' claims actually belong to [the insured] because 'the right to bring an action for personal protection insurance [PIP] benefits . . . belongs to the injured party.'" *Id*. at 442, quoting *Hatcher v State Farm Mut Auto Ins Co*, 269 Mich App 596, 600; 712 NW2d 744 (2006). The issue in *Moody* was whether providers' claims and the insured's claims could be consolidated for purposes of determining the amount in controversy under MCL 600.8301(1), the statute governing district court jurisdiction. This Court did not address the provider's right to bring a claim when the insured failed to undertake appropriate legal action to secure his own right to benefits. Defendant also inappropriately relies on the *Moody* Court's statement that "the injured party may waive by agreement his or her claim against an insurer for no-fault benefits,

and a service provider is bound by the waiver." *Id.* at 442-443. This case does not involve any agreement by plaintiff to waive a claim for no-fault benefits.

Nothing in MCR 2.116 provides that a party may prevail on a summary disposition motion by default. On the contrary, a party is entitled to summary disposition under MCR 2.116(C)(10) only if "there is no genuine issue of material fact, *and* the moving party is entitled to judgment . . . as a matter of law." (Emphasis added.) Moreover, in *Chiropractors Rehab*, this Court held that while an injured party's failure to submit to an IME allowed the insurer to suspend benefits until compliance was made, failure to comply with the IME "is not tantamount to dispositive evidence that an insured is *not entitled* to PIP benefits." *Chiropractors Rehab*, ___ Mich App at ___; slip op at 11 (emphasis in original). This Court further noted, albeit in dicta, that "an injured party's failure to timely bring suit would not in and of itself bar a provider's timely action against the insured" if the insured is *eligible* for benefits. *Id*. at ___; slip op at 9 n 8 (emphasis in original). Thus, plaintiff's failure to respond to defendant's summary disposition motion would not preclude VHS's recovery of benefits for which plaintiff is otherwise eligible.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood