*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KERMIT LAMARK COPELAND,

        Plaintiff-Appellant,

v

ALLSTATE INSURANCE COMPANY,

        Defendant-Appellee.

FOR PUBLICATION
March 16, 2026
10:38 AM

No. 373748
Wayne Circuit Court
LC No. 23-004967-NF

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

M. J. KELLY, J. (*concurring*).

I concur fully with the opinion and write separately to bring attention to what I view as a significant error that has crept into our jurisprudence regarding the issue of domicile under the no-fault act, MCL 500.3101 *et seq*.

In *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 481; 835 NW2d 363 (2013), a child of divorced parents was injured in a motor-vehicle crash and a dispute arose as to whether the child was domiciled in the household of one or both of her parents. Our Supreme Court determined that "a child of divorced parents has only one domicile at any given point in time." *Id*. In doing so, the Court held that, historically, the term "domicile" has been defined as "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id*. at 493 (quotation marks and citation omitted). It has also been defined as "that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." *Id*.

Relying upon caselaw specific to a person's *national* domicile, see *In re High*, 2 Doug, 515 (1847),[1] the *Grange* Court considered it as a settled maxim that every man must have such a national domicile somewhere" and that it is "equally well settled *that no person can have more*

---

[1] *In re High*, is a 179-year-old probate case where the court had to determine which nation a decedent was domiciled in—Cuba or the United States. See *In re High*, 2 Doug at 525-526.

*than one such domicile, at one and the same time*." *Id*. at 493-494.  Based upon that rationale, the *Grange* Court concluded that "from the time of a person's birth—from childhood through adulthood—a person can only have a single domicile at any given point in time." *Id*. at 494.  The Court further reasoned:

> A man retains his domicile of origin [upon his birth] until he changes it, by acquiring another; and so each successive domicile continues, until changed by acquiring another.  And it is equally obvious that the acquisition of a new domicile does, at the same instant, terminate the preceding one.

Stated differently, the *Grange* Court concluded that, once established at a specific place, a person's domicile remains at that place until the person acquires a new domicile at some other place.

It is that last concept which the trial court considered decisive in this case; allowing the notion that domicile *must* exist somewhere, even if it trumps the *Workman-Dairyland*[2] multifactored framework.  The trial court cannot be criticized too harshly for seemingly coming to the conclusion that, even if a litigant comes up short on the majority of the factors outlined in *Workman* and *Dairyland*, it must nevertheless find that the litigant has a domicile somewhere, and that domicile defaults to the last place the litigant had permanently resided, irrespective of whether the facts establish otherwise.  Indeed, *Grange* supports such an interpretation.

However, I believe that the more relevant and significant holding from both *High* and *Grange* is that, while an individual may have more than one residence, he or she can have only one domicile.  And *Grange* was clear in its holding: "we hold that a child, whose parents are divorced and who has more than one legal residence, may have only a single domicile at any one point in time that continues until the child acquires a different one." *Id* at 496.  The *Grange* facts are a far cry from situations such as the present case, where an adult had not resided in the residence of a sister since *temporarily* doing so some 15 years earlier.

The error in citing the *High* maxim is concluding that, just because a person may not have more than one domicile, it follows that they must have a domicile.  To the extent *High* stated anything of the sort, it must be remembered that *High* said that "every man must have a national domicile somewhere."  I contend that a person can be domiciled in a nation, but not domiciled within that nation.  They can be homeless or otherwise of no fixed abode.  Take for example a person legally evicted from his apartment with an order from a court of law prohibiting his return to the apartment building.  Where is his domicile?  It cannot be at the location he lived in prior to moving into the apartment because that domicile would have ended at the time that his domicile became the apartment.  But it seems clear that it also cannot remain at the apartment to which he is now prohibited from returning to as a result of his eviction.

---

[2] The *Workman-Dairyland* factors are derived from *Workman v Detroit Auto Inter-Ins Exchange*, 404 Mich 477; 274 NW2d 373 (1979) and *Dairyland Ins Co v Auto Owners Ins Co*, 123 Mich App 675; 333 NW2d 322 (1983).

Consider also a person paroled after a long prison sentence. His last domicile was with his parents 20 years earlier at the time of his incarceration. The parents died while he was in prison and the former family home has been sold. One would not consider the prison to be his domicile because it can be assumed that he did not have the intent to return to prison upon his release. But, at the same time, it cannot be said to remain with his now-deceased parents in a house that has since been sold to an unknown third party. The same would also be true in the case of a person whose domicile burns to the ground or is otherwise destroyed in a natural disaster. Such a person might temporarily reside with friends or relatives or even in a motel or shelter, but it cannot reasonably be said that the residence of his or her family or friends or temporary hotel lodging qualifies as a new domicile. And yet, concluding by default that the domicile must therefore be at a place that no longer exists defies reality.

It remains a fact that there are many homeless people who sleep in tents or cardboard boxes as shelter. They have no address and sleep in different locations—parks, under highway overpasses, etc. every night. Do these people consider their succession of temporary camps their "true, fixed, permanent home" with the intent to return there? I posit that they do not.

I reject the notion that, come what may, a person must be deemed to have a domicile. This adage, based upon caselaw related to *national* domicile, simply leads to absurd results, particularly in the case of homeless people who, practically by definition, lack a "true, fixed, permanent home" and people whose domicile no longer exists.

/s/ Michael J. Kelly